UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRASAD NANNIPANENI and
SUSEEELA NANNIPANENI,

Plaintiffs,

v.

ASHLAND CAPITAL FUND 2,
LLC,

Defendant.
______________________________ /

Case No. 24-cv-12990

Hon. F. Kay Behm
United States District Judge

**OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 42)**

## I. PROCEDURAL HISTORY

Plaintiffs Prasad and Suseela Nannipaneni filed this action in the Oakland County Circuit Court in October 2024, against Defendants Ashland Capital Fund 2, LLC, and Allied Servicing Corporation, seeking a declaration that a mortgage on their property is unenforceable, an order quieting title, and an injunction against foreclosure. Ashland removed on the basis of diversity jurisdiction, and the matter was assigned to former Chief Judge Cox. ECF No. 1. Ashland moved to dismiss on the grounds that it was not guilty of

laches, and the court (Cox, J.) denied the motion on the ground that laches is an affirmative defense rather than an element of Plaintiffs' prima facie quiet-title claim. ECF No. 15. The case was then reassigned to the undersigned. *See* Text-Only Order dated 3/25/25. Allied Servicing Corporation was then dismissed by stipulation of the parties (ECF No. 20) and Ashland counterclaimed for a declaration that the mortgage is enforceable (Count I) and for judicial foreclosure under MCL 600.3101 *et seq*. (Count II). ECF No. 25. Ashland now moves for summary judgment on each of their claims, as well as on Plaintiff's claims. ECF No. 42. Plaintiffs responded to the motion (ECF No. 43), and Ashland filed a reply (ECF No. 45).

For the reasons explained below, the court **GRANTS** Ashland's motion for summary judgment **IN PART** on the discharge, waiver, and limitations issues presented, but stops short of ordering full relief to Defendant because the court finds that it would benefit from additional briefing on some of the issues argued in Plaintiff's response brief.

## II. FACTUAL BACKGROUND

### A. The loan and the senior foreclosure

In 2007, Plaintiffs (the Nannipanenis) executed a future advance mortgage (FAM) securing a home-equity line of credit (HELOC) with a maximum principal of $160,000. This was recorded on December 17, 2007. ECF No. 42, PageID.315. The FAM was junior to a separate senior mortgage of roughly $1,000,000. Through various assignments, Ashland became the holder of the FAM in 2019, and Allied Servicing Corporation serviced the loan. The FAM's provisions state that at the lender's option, the secured debt may be accelerated and the collateral foreclosed "in a manner provided by law" if the mortgagor defaults. ECF No. 49, PageID.557-58. It also states that all or part of the accrued interest and principal may then become immediately due and payable. *Id.* (FAM ¶ 9). Acceleration under the FAM is discretionary.

Later, a different lender foreclosed on the senior mortgage. The sheriff's sale for that matter occurred June 15, 2021, for $675,000, with the redemption period set to expire December 15, 2021. Plaintiffs, however, redeemed the property on December 9, 2021, and the Certificate of Redemption was recorded January 6, 2022. ECF No. 42, PageID.315–16; ECF No. 25 ¶¶ 16–20. There is no true dispute that

Ashland's secondary mortgage was revived because the Plaintiffs redeemed[1] – the present dispute is over whether the unique facts of this case mean that Ashland's mortgage was nonetheless rendered unenforceable by Ashland's filing of an IRS form 1099-C.

**B. The default, the 1099-C, and the corrected form**

The draw period for the HELOC was 120 Months (10 years), ending in 2017. The repayment period began in 2017 and was set for another 120 months (10 years), with a maturity date of January 15, 2027. ECF No. 42-3, PageID.346, 348. Plaintiffs say that their last payment on the HELOC was in 2011, and they assert that they received no communications about the loan until 2019, when they learned of the assignment to Ashland. ECF No. 43, PageID.487. Exhibits to the briefings show that the servicer's statements for tax years 2019 and 2020 (notably: before the senior loan's foreclosure sale occurred) reflected a zero principal balance on the FAM. ECF No. 43,

[1] "[J]unior interests in the property are not extinguished until the statutory redemption period expires," because title does not vest in the purchaser until the redemption period expires. *Parker v. PNC Bank, NA (In re $55,336.17 Surplus Funds)*, 319 Mich. App. 501 n.1 (2017); *see also Grass Lake Golf Club v. Gtr Jackson Props.*, No. 265408, 2008 Mich. App. LEXIS 759, at *13 n.6 (Ct. App. Apr. 15, 2008) ("In Michigan redemption results in a voiding of the foreclosure purchaser's deed and a reinstatement of all liens, except the one redeemed.").

PageID.501; *id.* at PageID.504-05. The record is unclear why there was a "0.00" principal balance on these tax forms in 2019 and 2020. Defendant also emphasizes in their brief and at argument that the draw period did not expire until 2017, and say that no payments were due until 2017 – but it appears that there should have been some (albeit small) payments due even during the draw period (see terms of payment during the draw period, ECF No. 42-3, PageID.348, and Defendant's letter in 2020, ECF No. 42-11, PageID.388),[2] and this argument mostly ignores the three years from 2017-2020, when the draw period had expired and the repayment period should have begun. Monthly payments or collection activity should have been occurring during that time – it is unclear from the record whether either of these happened, or if not, why neither of these happened. Nonetheless, the record reflects that in March 2020, Ashland informed the Nannipanenis that their loan was in default, and accelerated the debt. ECF No. 42-11,

[2] At argument, Defendant said that the Plaintiffs could have made payments from 2011 to 2017, but were not required to under the loan documents. That seems inconsistent with Ashland's prior communications, so the court does not agree that point is beyond dispute. ECF No. 42-11, PageID.388 (letter to Plaintiffs from Ashland: "This default consists of failing to pay the 12/15/2011 payment and subsequent scheduled payments . . ."); ECF No. 42-3, PageID.348 (defining the "minimum payment" due during the draw period, which appears to be at least $100 or more).

PageID.388 (March 10, 2020 letter warning of default and acceleration if not cured).

Ashland was aware of the foreclosure on the senior mortgage in 2021. On October 27, 2021 (after the sheriff's sale, but before the redemption), an Ashland representative instructed Allied to "close the file and charge it off." ECF No. 42-8, PageID.374 (emails). Allied then issued a Form 1099-C reporting $237,267.90 as cancelled or discharged. ECF No. 43, PageID.513. Ashland emphasizes that none of their internal communications directed Allied to discharge the underlying debt or release the mortgage; nor is there any indication other than the 1099-C that such an act occurred. ECF No. 42, PageID.316.

Emails from March 2023 reflect that Ashland and Allied issued the form 1099-C because Ashland believed the lien would be extinguished once the senior redemption period expired. But when Ashland received communications from an attorney on behalf of the Nannipanenis in 2023 indicating that they needed a discharge of lien from Ashland (ECF No. 43, PageID.524), Ashland realized that Plaintiffs had in fact redeemed the property and that their redemption had kept the junior lien alive. ECF No. 43, PageID.517 ("It is possible

that the borrower redeemed . . . and this lien is still active"); ECF No. 43, PageID.527 (letter to the Nannipanenis). Apparently realizing that the 1099-C had been issued by mistake, Ashland filed a corrected Form 1099-C reporting no cancellation in September 2024. ECF No. 43, PageID.528.

At this time, Ashland tried to negotiate with the Nannipanenis to find a resolution to the outstanding loan. ECF No. 43, PageID.526 (letter from Ashland suggesting negotiation). But no resolution was reached, so Ashland began foreclosure proceedings. ECF No. 42, PageID.317. These second foreclosure proceedings were withdrawn in mutual agreement that this lawsuit would determine the parties' legal obligations. *Id.* As of December 2, 2025, the total amount due and owing was $346,999.69 with a per diem amount of $33.7656 of interest per day. ECF No. 42-12, PageID.391.

Plaintiffs state that, in reliance on the original 1099-C, they borrowed $675,000 to redeem the property, reported the $237,267.90 as income on their 2021 returns, and paid the property's taxes, insurance, and maintenance for several years. ECF No. 43, PageID.501-02. And

they argue that reliance should be taken into account in finding that Ashland waived their right to collect.

## III. STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is a genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-

moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004). To fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U .S. at 248, 251.

**IV. ANALYSIS**

The court address the issues in two parts: (A) statute of limitations; and (B) discharge or waiver. Since this is a diversity action, the court applies the law Michigan courts would apply. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

**A. Statute of Limitations**

The court starts at a different place than the parties, because the finding then helps inform the court's discussion of discharge and waiver. Defendant seeks summary judgment, in part, that this action is not barred by the statute of limitations. Plaintiffs, in response, argue that the foreclosure claim is time-barred because the six-year period applicable to a promissory note may have expired years ago because there is no evidence showing "whether the debt was accelerated prior to 2019." ECF No. 43, PageID.497. Therefore, in their view, a jury could find that the loan was accelerated prior to 2019 and outside of the limitations period. This defense fails, and Defendant is entitled to summary judgment on this issue.[3]

---

[3] Elsewhere in their response, Plaintiffs argue that the loan was in default since 2011. But they do not assert this argument under their statute of limitations argument, ECF No. 43, PageID.497, so to the extent the argument perhaps overlaps the limitations issue, the argument was waived as to this point.

First, Plaintiffs' argument is that "[t]here were prior lenders who held the note between 2007 and 2019. The records of those lenders have never been provided. Without those records, it is impossible to establish whether the debt was accelerated prior to 2019." ECF No. 43, PageID.497. Plaintiff argues that the loan may have been accelerated by a prior holder more than six years before the filing of the counterclaim, and they allege Defendant ought to have those records as the current holder of the note. But as Defendant points out, Plaintiffs were also always parties on the loan. Defendants have come forward with evidence that acceleration occurred in 2020. ECF No. 42-11, PageID.388. If the loan was accelerated earlier, then Plaintiffs, as well as Defendant, would have those records or should be able to provide proof of that at summary judgment. If Plaintiffs seek to assert this affirmative defense to the Defendant's counterclaim, then Plaintiffs bear the burden of proof. Simply asserting the argument that the debt may have been accelerated earlier is speculation insufficient to survive summary judgment.

Plaintiffs' counsel argued at the hearing in this matter that a spoliation sanction would allow a jury to draw an adverse inference.

But Plaintiffs point to no evidence showing that Defendant intentionally destroyed any records of earlier acceleration. *See Ross v. Am. Red Cross*, 567 F. App'x 296, 301-02 (6th Cir. 2014) ("Spoliation is 'the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction.'") (quoting *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003)). That Defendant does not have evidence of prior acceleration does not suggest spoliation absent some evidence that earlier acceleration occurred – a fact Plaintiffs would be aware of. *See, e.g.*, *Williams v. Kuryakyn Holdings*, No. 18-13606, 2021 LX 65116, at *23 (E.D. Mich. Apr. 7, 2021) ("[A] party seeking spoliation sanctions must do more than speculate evidence exists and must present evidence to the Court that the evidence existed at one time.") (quoting citation omitted); *United States v. Haney*, No. 3:24-CR-113, 2026 LX 88329, at *13 (E.D. Tenn. Jan. 29, 2026) (party's "speculation regarding spoliation" did not warrant sanctions). Plaintiffs' speculative assertion of spoliation is not sufficient to entitle them to any such sanction or adverse instruction.

With that in mind, Plaintiff admits that the statute of limitations "calls for a six-year period from the date the claim accrues. For the

purposes of this matter, accrual would have taken place when the note was 'accelerated' and made immediately due and payable by the lender."[4] So, accepting that the note was accelerated in March 2020 (as the evidence shows), and accepting Plaintiffs' concession here as to the applicable limitations period, this action is timely. *See* ECF No. 42-11, PageID.388.

### B. Discharge or Waiver

With that in mind, Plaintiffs must show that, even though Defendant's collection and foreclosure efforts are timely, Defendant is barred from doing so. Plaintiff's original complaint rested in part on their argument that the 1099-C they received indicated the debt was "discharged" and the debt was cancelled. ECF No. 1, PageID.12, 19. Defendant seeks summary judgment on the issue of a discharge, and asks the court find that the FAM was not discharged as a matter of law. ECF No. 42, PageID.327. Plaintiffs say that "the 1099C constitutes a

[4] For an installment obligation, the limitations period generally runs separately on each installment as it falls due. *Sparta State Bank v. Covell*, 197 Mich. App. 584, 587–88 (1992). However, if the obligation contains an acceleration clause, then on the acceleration the entire unpaid balance becomes due and the claim on that balance accrues at that time. *Id.* at 588; *Diversified Fin. Sys., Inc. v. Schanhals*, 203 Mich. App. 589, 592 (1994). The FAM contains an acceleration clause that occurs "[a]t the option of the Lender." ECF No. 49, PageID.558. Ashland accelerated the FAM in 2020, making the counterclaim timely.

waiver and discharge of Defendant's claims." ECF No. 43, PageID.496. The court agrees with Defendant; the 1099-C did not constitute discharge as a matter of law. Waiver is more complicated on these facts, but a Michigan jury would have to find waiver by clear and convincing evidence, and no reasonable jury could find the kind of clear, unequivocal waiver the law requires on this record.

### i. The 1099-C Had No Independent Legal Effect

The parties' dispute on the question of discharge centers around Defendant's filing of the 1099-C form. Michigan law provides for the discharge of an obligation arising from a negotiable instrument:

> A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as . . . cancellation of the instrument, . . . or (ii) by . . . otherwise renouncing rights against the party by a signed writing.

Mich. Comp. Laws § 440.3604(1).

The 1099-C form, however, did not itself operate to discharge or extinguish the Nannipanenis' debt. A 1099-C is an instrument of the Internal Revenue Code's information reporting system. As the Fourth Circuit has explained, a creditor may be required to file a Form 1099-C

"even though an actual discharge of indebtedness has not yet occurred or is not contemplated," because the filing satisfies a reporting obligation under 26 C.F.R. § 1.6050P-1(a) rather than effecting a discharge. *FDIC v. Cashion*, 720 F.3d 169, 178-79 (4th Cir. 2013) ("[F]iling a Form 1099-C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred."). Thus the form alone "does not ... constitute sufficient evidence that a debt has been cancelled." *Id*. at 180.

Admittedly, Plaintiffs are not taking a novel position; there is a split in authority as to whether, and how, the filing of a 1099-C can show evidence of discharge of a debt. And both parties agree that there is no Sixth Circuit precedent on point. A minority of cases, including some in this circuit, hold as Plaintiffs argue that "the issuance of a Form 1099-C reflects that a financial institution has, . . . discharged an indebtedness[.]" *In re Reed*, 492 B.R. 261, 272 (Bankr. E.D. Tenn. 2013); *see also In re Crosby*, 261 B.R. 470, 477 (Bankr. D. Kan. 2001) ("[I]t would not be equitable to allow the Credit Union to collect its debt

from Ms. Petersen while the 1099-C remains in effect[.]"). Part of the theory of these cases is that "the tax consequences" of the filing "ma[k]e collection inequitable[.]" *See Wells Fargo Advisors, LLC v. Mercer*, 735 F. App'x 23, 25 (2d Cir. 2018) (explaining that approach).

The more persuasive line of cases, however, holds that a Form 1099-C is, alone, not evidence that a debt was discharged, because the filing of a 1099-C is a reporting mechanism that can occur for a variety of reasons. *Cashion*, 720 F.3d at 178 (4th Cir. 2013);[5] *Wells Fargo*, 735 F. App'x at 24 (2d Cir. 2018); *Gericke v. Truist*, No. 21-1776, 2022 U.S. App. LEXIS 16321, at *5-6 (3d Cir. June 14, 2022) ("Based on the text of the regulation, the filing of a Form 1099-C is a reporting requirement that does not depend on whether the debt has been 'actually discharged,' or the debtor has actually been released from his obligations on the underlying debt."); *Owens v. Commissioner*, No. 02-61057, 2003 U.S. App. LEXIS 12481 (5th Cir. May 15, 2003) (per curiam) (unpublished), (observing that a Form 1099-C was not evidence that the creditor had actually cancelled a debt, but rather reflected at

[5] *Cashion* is "[t]he only precedential Court of Appeals' decision to interpret 26 C.F.R. § 1.6050P-1 [the IRS regulation regarding a 1099-C.]" *Gericke v. Truist*, No. 21-1776, 2022 U.S. App. LEXIS 16321, at *6 (3d Cir. June 14, 2022).

most an intention to cancel the debt in the future); *see also, e.g.*, *Diaz v. Green Tree Servicing LLC*, No. C15-359RSL, 2016 U.S. Dist. LEXIS 47318, at *5 (W.D. Wash. Apr. 7, 2016) ("a Form 1099-C alone is not competent evidence that a debt has been cancelled"); *cf. Cavoto v. Hayes*, 634 F.3d 921, 923 (7th Cir. 2011) (addressing the purpose of a 1099-C: "a Form 1099-C allows the IRS to compare the amount of discharged debt claimed by a lending institution with the amount of income reported by the person whose debt was discharged."). This also represents the majority view. *Cashion*, 720 F.3d at 178 ("a majority of the courts to consider the matter" come out this way); *Wells Fargo*, 735 F. App'x at 24 ("The majority of courts to address this issue have concluded that a Form 1099-C is not evidence that a debt was discharged, reasoning that, under the applicable regulations, 'a creditor may be obligated to file a Form 1099-C even though an actual discharge of indebtedness has not yet occurred or is not contemplated.'"). And another court in this district recently addressed this issue and agreed with this view. *Dunning v. Cmty. Choice Credit Union*, No. 25-13873, 2026 LX 379860, at *7 (E.D. Mich. June 17, 2026) ("a 1099-C filing alone does not indicate that a debt has been cancelled."). Some of the

authorities cited by Plaintiff likewise treat the form as evidence that can indicate intent to discharge rather than dispositive of discharge. *See Franklin Credit Mgmt. Corp. v. Nicholas*, 73 Conn. App. 830, 842 (2002). The court finds the majority view the more persuasive and adopts it; the filing of the 1099-C did not discharge the debt as a matter of law. And although Plaintiffs argue that the form accomplished discharge, they too acknowledge that the case law cited by Defendant shows that "the filing of a form 1099 C alone does not establish a discharge." ECF No. 43, PageID.492. So to the extent that the filing of a 1099-C is relevant at all, it is not dispositive. Therefore, there is no genuine factual dispute that the debt and the mortgage were not extinguished by formal discharge by operation of the 1099-C.

As a final note on the legal effect of the 1099-C, the court notes that Defendant has raised an additional issue. They argue that Ashland's representatives were wrong that a 1099-C had to be filed at all. ECF No. 42, PageID.330. IRS regulations require the filing of a 1099-C if an "identifiable event" occurs. 26 CFR § 1.6050P-1(a). One of those events is "[a] cancellation or extinguishment of an indebtedness that renders a debt unenforceable in a receivership, foreclosure, or

similar proceeding in a federal or State court, as described in section 368(a)(3)(A)(ii) (other than a discharge described in paragraph (b)(2)(i)(A) of this section)[.]" *Id.* at § 1.6050P-1(b)(2)(i)(B). But Ashland says this provision does not apply because the underlying debt would still have been enforceable even if the lien was extinguished. In Michigan, although the foreclosure of a senior lien may make a junior lien unenforceable, it will not necessarily make the debt itself unenforceable. A mortgage is a lien or security interest, not a debt; "[t]he underlying debt is not extinguished just because the mortgage is; rather the debt and the accrual of interest lives on." *RCS Recovery Servs., LLC v. Matthews*, No. 351806, 2021 Mich. App. LEXIS 2522, at *9 (Ct. App. Apr. 22, 2021) (citing *First of Am. Bank-Oakland Macomb, NA v. Brown*, 158 Mich. App. 76, 81, 404 N.W.2d 706, 709 (1987)). This bears little on the court's analysis, because it does not speak particularly to whether Ashland intended to cancel the Plaintiffs' obligation (that is, if Ashland actually did intend to relinquish the debt, it is hard to see why this alleged misapprehension of law would

matter).[6] As far as this point may help to illustrate why a 1099-C is not itself a discharge of a debt, that point is conclusively resolved by the case law, and this secondary principle may underscore the point but is not necessary to the court's conclusion.

**ii. Waiver**

The core of Plaintiff's argument is, instead, waiver: the totality of Defendant's conduct shows it intended cancellation of the debt, including the 1099-C, and in a long course of conduct waived its right to collect in the present action. *See* ECF No. 43, PageID.492 (making their case in terms of "waiver"). Specifically, Plaintiffs argue that they did not make any payments on the mortgage past 2011, that they received several notices indicating the mortgage had a "zero" principal balance, and the 1099-C received after the foreclosure sale reflected an intention to discharge and cancel the debt. ECF No. 43, PageID.491. They further note that Ashland did nothing to correct the 1099-C for several years after the Plaintiffs redeemed the foreclosure. *Id.* Finally, they

[6] The court also finds it irrelevant whether Ashland selected the wrong subsection on the form; the relevant fact for the analysis is the submission of the form itself based on the understanding that the foreclosure had extinguished the lien, rather than the specific identifiable event they selected.

argue that after receiving the 1099-C and they understood it to "cancel" the secondary mortgage, they borrowed additional money in reliance on that understanding to redeem the first mortgage, and have since paid all ordinary expenses on the house. *Id.*

Waiver is "intentional and voluntary relinquishment of a known right." To succeed on this claim, Plaintiffs must establish Ashland's intent to relinquish their contractual rights by clear and convincing evidence. *See Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 382, 374 (2003). Any waiver must be explicit, voluntary, and made in good faith. *Sweebe v. Sweebe,* 474 Mich. 151, 157 (2006). Waiver is an issue of fact as well as law and may be implied by a party's decisive, unequivocal conduct. *Patel v. Patel*, 324 Mich. App. 631, 634 (2018).[7]

At summary judgment, the court should "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff

[7] Plaintiffs define their argument in terms of "waiver or discharge." ECF No. 43, PageID.491. And Plaintiffs cite *Patel v. Patel*, 324 Mich. App. 631 (2018) for the law on waiver. ECF No. 43, PageID.493. So the court, taking their argument as presented, largely follows their lead and analyzes the remainder of their claim under Michigan law's "waiver" standards.

must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Or in this case, when the standard for waiver is "clear and convincing," the question is whether a jury could find for the plaintiff by "clear and convincing" evidence.

A reasonable jury could not find for Plaintiffs on these facts. The first and dispositive reason is that the filing of a 1099-C is not prima facie evidence of cancellation of a debt. *See, e.g.*, *Cashion*, 720 F.3d at 180. Lacking that key point of their case, Plaintiffs lack clear and convincing evidence of waiver or discharge because the remainder of their evidence must face the fact that Ashland unquestionably accelerated the loan in March 2020, has sought to pursue that debt within the statute of limitations, and cannot use the 1099-C as rebuttal evidence.

Granted, no precedent binds the court on the point of law regarding the evidentiary value of the 1099-C. But here, even if the

1099-C could constitute some evidence of intent to waive the mortgage,[8] no jury could find Ashland unequivocally and explicitly waived their right to collect or cancelled the debt by "clear and convincing" evidence, so the court can address the alternative view too. Plaintiffs propose a few different facts that, in their view, would contribute to a finding of waiver – but none are availing.

*a. 1099-C and Later Correction*

First and foremost, Plaintiffs argue that they received an IRS Form 1099-C telling them that the debt had been "cancelled," and that is evidence of waiver. But "[e]ven in the minority view, . . . if a creditor sends a corrected Form 1099-C, the new form can rebut a presumption that the original Form 1099-C evidenced cancellation. The corrected Form 1099-C rebuts such a presumption because the correction eliminates inequitable tax consequences." *Henderson v. Truist Bank*, No. 1:22-cv-00341, 2022 U.S. Dist. LEXIS 218912, at *11 (E.D. Va. Dec. 5, 2022) (citing *Wells Fargo Advisors, LLC v. Mercer*, 735 F. App'x

[8] "In another case, where a properly authenticated Form 1099-C is introduced into evidence along with other circumstantial evidence of cancellation of the debt, the Form 1099-C could be properly considered by the trier of fact under the totality of the circumstances on the ultimate issue of whether the debt in question was, in fact, cancelled." *Cashion*, 720 F.3d at 181.

23, 25 (2d Cir. 2018)). Here, Ashland unquestionably filed a correction to the 1099-C, and they apparently did so in time for the Plaintiffs to request a refund from the IRS for any overpaid taxes. ECF No. 42, PageID.332 (explaining the timing). So even under Plaintiff's view that the filing of a 1099-C evidences waiver, the corrected Form 1099-C rebuts any presumption that waiver was intended or occurred.

Admittedly, Plaintiffs would read the situation differently. At oral argument, counsel argued that because there was a temporal gap between the correction and the original filing, the correction is irrelevant to Ashland's intent at the time they filed the 1099-C in the first place. This argument is not without some basis, but it ultimately lacks merit. First, Plaintiffs' argument ignores the possibility that the original was a mistake. And if the original was a mistake, then the correction is relevant to proving that original intent. Plaintiffs' own citations illustrate that a mistaken 1099-C cannot constitute discharge. *See Franklin Credit Mgmt. Corp. v. Nicholas*, 73 Conn. App. 830, 841, 812 A.2d 51, 59 (2002) ("the cancellation of a negotiable instrument generally has no effect when it is made by mistake"). Second, the argument seemingly discards the same authority Plaintiffs otherwise

embrace. As explained, the minority view that Plaintiffs otherwise adopt is the same view that holds that a form 1099-C is capable of correction because the original may be erroneous or mistaken. *See In re Reed*, 492 B.R. 261, 263, 272 (Bankr. E.D. Tenn. 2013); *In re Crosby*, 261 B.R. 470, 472 (Bankr. D. Kan. 2001); *In re Welsh*, No. 06-10831ELF, 2006 Bankr. LEXIS 3756, 2006 WL 3859233, at *1-2 (Bankr. E.D. Pa. Oct. 27, 2006). Plaintiffs cannot embrace only half of the minority view; all courts that take that view appear to agree that the fact of filing a correction is substantial evidence cutting against waiver or discharge. And where such evidence exists, no reasonable jury could find "clear and convincing" evidence of waiver or discharge.

Both parties point the court to *Gudeman v. Saxon Mortg. Servs., Inc.*, No. CIV.A. 13-13341, 2014 WL 1308802 (E.D. Mich. Mar. 28, 2014), as containing reasoning analogous to the present facts. In *Gudeman*, a motion to dismiss was denied on the basis that no binding authority indicates that a Form 1099-C could *not* constitute evidence that a mortgage was "otherwise satisfied." And thus discovery could establish why the 1099-C was filed and whether it was intended to "satisfy" the mortgage (or reflect that the mortgage had been satisfied).

That court also pointed out, however, that "if 'evidence' is shown as to the intention of the [ 1099-C] that it was *not* intended to 'satisfy' the mortgage, then as a matter of law, the mortgage is not discharged." *Gudeman*, 2014 U.S. Dist. LEXIS 41855, at *10 (emphasis added). In the present case, the clearest evidence of Ashland's intent is Ashland's email chain. The email chain, beginning June 18, 2021, shows that a representative of Ashland was monitoring the mortgage and foreclosure sale. ECF No. 42-8, PageID.374-77. The representative anticipated that the sale would not be enough to cover the senior mortgage, and therefore that the junior lien would be extinguished. On October 27, 2021, the representative indicated the sale had occurred as anticipated and instructed the servicer to "close the file and charge it off." *Id.* at PageID.374. Even viewing this in the light most favorable to Plaintiffs, that does not reflect intentional discharge or intentional cancellation of the debt – it reflects a mistaken belief that the mortgage lien was extinguished and the debt effectively uncollectible, and the intent to make certain accounting moves based on that knowledge. *See Ally Fin., Inc. v. State Treasurer*, 502 Mich. 484, 507 (2018) ("A write-off is simply an internal recognition by a lender that an account is worthless after

attempts at collection have failed. . . . When a lending institution 'writes off' a 'bad debt,' it is merely indicating that the debt is uncollectible. That is, it is no longer an asset of the institution. A 'write off' does not mean that the institution has forgiven the debt or that the debt is not still owing.") (quotation marks and citations omitted, cleaned up); *see also, e.g.*, *In re Anderson*, 884 F.3d 382, 385 (2d Cir. 2018) (explaining that a debt is "charged off" when "the bank changed the outstanding debt from a receivable to a loss in its own accounting books" notwithstanding the fact "that the debt remain[s] unpaid"). The later March 2023 emails also confirm that Ashland charged the loan off in the belief that the senior foreclosure had extinguished its junior lien, rather than as an act to discharge the Nannipanenis' obligation to pay, and only later realized that the Plaintiffs' redemption preserved the lien. ECF No. 42-10, PageID.381; ECF No. 43, PageID.517. Ashland's conduct thus reflects a charge-off based on a mistaken belief that the lien no longer existed and was uncollectible, not a knowing, voluntary decision to relinquish an existing right to foreclose and collect. Unlike the pleading stage in *Gudeman*, there is abundant evidence present in the record showing

Ashland's intent in filing the 1099-C, such as Ashland's emails showing they did so based on a mistaken understanding of what occurred during the foreclosure.

*b. Silence*

Plaintiffs also focus heavily on their allegations that they had, in essence, heard little from Ashland or any other servicer about the loan over the years. Plaintiffs say:

- There was no action to enforce the claim for over ten years after the note went into default in 2011;
- Plaintiffs received "mortgage interest" statements in 2019 and 2020 from Defendant indicating there was no principal balance due on the mortgage (Exhibit B);
- Defendant chose to take no action to enforce its claims after they received notice of a foreclosure sale conducted by the holder of the first mortgage (Exhibit C).

ECF No. 43, PageID.491.

None of these points suffice to carry Plaintiff's burden to show a genuine dispute of material fact as to waiver. First, even assuming it is right that payments were due from 2011-2020, and Plaintiff failed to pay any of them, and that Defendant did not pursue any collections during that time, the point is mooted by the court's finding on the

statute of limitations and the acceleration in March 2020.[9] Because acceleration occurred in March 2020, however, the entire debt became due and owing in 2020 regardless of what had happened earlier. Plaintiffs cannot rely on the silence from 2011-2020 to establish waiver when in March 2020, Defendant plainly asserted a right to collect, and there is no genuine dispute at this stage they had the right to do so at that time.

This analysis similarly applies to the mortgage interest statements. Although Plaintiffs received mortgage interest statements for their IRS form 1098 showing a $0.00 principal balance in 2019 and 2020, these facts are also irrelevant where Defendant accelerated the loan in March 2020. *See* ECF No. 42-11, PageID.388. Whatever these amounts are meant to signify on the 1098 forms, Ashland was plainly pursuing payment of the debt during this same period. These two tax documents do not evidence waiver or intent to discharge where in 2020 (after the tax year 2019 Form 1098, and assumedly before the tax year

[9] Defendant argues that no payments were due at all until 2017, when the draw period ended. As explained above, the evidence is not quite clear on that point because there appeared to be some minimum amount due even in the draw period. But anyway, the point is irrelevant where Plaintiff concedes that the entire balance becomes due on acceleration.

2020 Form 1098) Defendant clearly and unequivocally asserted its right to collect on the debt. In the court's view, Plaintiff's argument about the importance of the tax forms is actually a species of *reliance* argument – that is, it speaks more directly to the allegedly ambiguous communications Plaintiffs received and what Plaintiff did in reliance on that information, than it does to Defendant's subjective intent.

Finally, on the merits, Plaintiffs' argument is that Ashland took no collection action at all until 2020, but Michigan law is clear that mere silence cannot establish waiver in contracts. *Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 382, 374 (2003). A court in this district applied this principle to a loan servicer in *Fuoco v. Bank of Am.*, 115 F. Supp. 3d 874 (E.D. Mich. 2015), holding that the servicer's silence after several missed payments, even coupled with the acceptance of partial payments, did not waive later enforcement of the debt. *Id.* at 881 (referring to silence after two missed payments: "This fails to satisfy the standard set forth in *Quality Products* as a matter of law."). This situation is similar: a period of inaction on missed payments is not the explicit, voluntary relinquishment that waiver requires.

Admittedly, the paperwork is somewhat messy and the record appears incomplete. The zero-balance mortgage statements in 2019 and 2020 are odd, and (perhaps because no attorney involved in this matter is a tax lawyer) no clear answer has been offered for them to date. But the fact remains that Defendant did take clear action to enforce its rights within the statute of limitations by accelerating the loan in March 2020. So the prior lack of collection activity over any prior period simply does not matter to the waiver analysis if there is no genuine dispute that Defendant could enforce its rights and accelerate the loan in March 2020, Defendant did in fact unambiguously do so, and that acceleration and notice was within the statute of limitations. *See infra* Section IV.D.[10]

So all that leaves is the lack of collection activity by Defendant after the foreclosure sale, before they reached out to the Nannipanenis in August 2024 (ECF No. 43, PageID.527) and filed the corrected 1099-C. But as explained, the mere silence by Defendant in this period is

[10] What Plaintiffs may actually be arguing, by raising this point, is a laches defense. ECF No. 26, PageID.266; *see generally* ECF No. 15; *see also Innovation Ventures, Ltd. Liab. Co. v. Custom Nutrition Labs, Ltd. Liab. Co.*, 912 F.3d 316, 343 (6th Cir. 2018) ("laches may bar a legal claim even if the statutory period of limitations has not yet expired."). But laches is a distinct defense from waiver, and is better argued as a separate legal issue if the record supports its application.

insufficient, as a matter of law, to show waiver by clear and convincing evidence. *See Quality Prods.*, 469 Mich. at 374 (2003); *Fuoco*, 115 F. Supp. 3d at 880. The court also again notes that all of the documentary evidence from this period – which includes the corrected 1099-C – even viewed in the light most favorable to Plaintiffs, reflects that Ashland did not reach out based on their mistaken understanding that the foreclosure had not been redeemed, and that evidence of mistake is inconsistent with a finding of waiver. *See FDIC v. Katzowitz*, No. 10-11057, 2012 U.S. Dist. LEXIS 13345, at *15 (E.D. Mich. Feb. 3, 2012) ("mistake cannot discharge a party's obligation, [because] such a cancellation is neither intentional nor voluntary"). No reasonable jury could find, on this record, "clear and convincing" evidence of "decisive, unequivocal conduct" showing waiver or discharge. *See Patel v. Patel*, 324 Mich. App. 631, 634 (2018); *Home-Owners Ins. Co. v. Perkins*, 328 Mich. App. 570, 586 (2019).

*c. Detrimental Reliance*

Plaintiffs also argue that their reliance interests bear on the enforceability of the mortgage and debt. They say, as a result of the 1099-C:

- Plaintiffs borrowed $675,000 and used the money to redeem the home from the foreclosure conducted by the first mortgage holder; and,
- Plaintiffs have paid all real estate taxes, all homeowners insurance, and all maintenance on the house since they received the notice of "cancellation" of the debt.

ECF No. 43, PageID.491.

Waiver, however, does not depend on what the other party did or believed. "A waiver is a voluntary relinquishment of a known right." *Dellar v. Frankenmuth Mut. Ins. Co.*, 173 Mich. App. 138, 146 (1988). Estoppel, on the other hand, "is based on some misleading conduct . . . which, being relied on, operates to the prejudice of another, and is applied to the wrongdoer by the court in denial of some right, which otherwise might exist, to prevent a fraud." *Id.*; *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 204-205 (2008) (in a contract case, for equitable estoppel to apply, a plaintiff must establish (1) defendant's acts or representations induced plaintiff to believe that the provision would not be enforced, (2) plaintiff justifiably relied on this belief, and (3) they were prejudiced as a result of their reliance on their belief that the provision would not be enforced); *see also Schuster v. Prestige Senior Mgmt., LLC*, 193 Wash. App. 616, 631-32 (2016) ("Strictly defined, waiver describes the act, or the consequences of the act, of one

party only, while estoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated. In contrast to waiver, estoppel involves some element of reliance or prejudice on the part of the party asserting estoppel."). The reliance interests Plaintiffs assert are simply not relevant to a waiver analysis.

They are however, not necessarily irrelevant to the issues presented. Plaintiffs are correct that some of the "minority view" decisions take a party's reliance interests into account – particularly, the payment of income tax that generally flows from the 1099-C filing. *See Wells Fargo Advisors, LLC v. Mercer*, 735 F. App'x 23, 25 (2d Cir. 2018); *In re Crosby*, 261 B.R. at 474 ("The actual (or at least potential) tax consequences of the form make it inequitable to allow the [creditor] to enforce its claims against the debtors."). But the court reads those decisions to say two things that are relevant to this case, and neither conclusion helps Plaintiffs' waiver argument. First, if a party corrects the 1099-C, the reliance interest asserted is no longer relevant – or at least, it no longer weighs to that party's advantage. *Crosby*, 261 B.R. at 474 ("*Until the [creditor] corrects or withdraws the 1099-C* it mistakenly

filed . . . , it cannot enforce its claim.") (emphasis added). That correction happened here on the part of the lender, and thus the implication in *Crosby* is that Plaintiffs here could have or should have corrected their taxes accordingly upon receiving the corrected notice, but they are not entitled to consider the debt cancelled. Second, those decisions speak in terms of "estoppel" and "inequity," which reflects that they are discussing a slightly different concept than waiver – which again, is about the intent of the party waiving its right. *See In re Reed*, 492 B.R. 261, 271 (Bankr. E.D. Tenn. 2013) ("It is *inequitable* to require a debtor to claim cancellation of debt income as a component of his or her gross income and subsequently pay taxes on it while still allowing the creditor, who has reported to the Internal Revenue Service and the debtor that the indebtedness was cancelled or discharged, to then collect it from the debtor.") (emphasis added); *id.* at 264 (defining the question as whether "First Tennessee Bank is *estopped* from enforcing its debt against the Debtors.") (emphasis added). These decisions are best understood to rest on principles of equity, not about the lender's affirmative intent to waive collection on the loan. To the extent reliance interests are relevant in this case, they would be relevant as to the

question of whether it is equitable to allow Defendant to foreclose or to collect the entire amount they claim – not whether Defendant intended to relinquish its right to collect at all.

Plaintiffs bear the burden of proving that a jury could find waiver at trial. Since the only evidence they offer (the 1099-C, Ashland's slow attempts to collect, and their reliance interests) cannot establish the intentional, explicit, unequivocal relinquishment that waiver requires by clear and convincing evidence, they have not carried that burden.

### C. Equitable Estoppel

The court has explained above that the reliance interests Plaintiff argues are not relevant to waiver (which focuses on the intent of the party relinquishing its right). But they are, as indicated, relevant to equitable estoppel, which is an affirmative defense Plaintiffs asserted in their answer. ECF No. 26, PageID.266 (Answer to the Counterclaim). "For equitable estoppel to apply, plaintiff must establish that (1) defendant's acts or representations induced plaintiff to believe that the [contract] would not be enforced, (2) plaintiff justifiably relied on this belief, and (3) she was prejudiced as a result of her reliance on her belief that the clause would not be enforced." *McDonald v. Farm Bureau Ins.*

*Co*, 480 Mich. 191, 204-05 (2008). Arguably, Plaintiffs waived that estoppel defense by failing to raise it explicitly in their response to the motion for summary judgment. But that finding would rest uneasily on these briefings, where Plaintiffs plainly and clearly argue their reliance interests are relevant. And Defendant did not directly respond to those arguments other than to point out that they were not relevant to proving waiver or discharge. In particular, the parties have not put into evidence whether Plaintiffs recovered any income tax after the corrected 1099-C, or what precisely the tax consequences were of the original 1099-C. Defendant's own emails reflect the possibility that some amount might be credited to Plaintiff, assuming Plaintiffs reasonably relied on Defendant's representations in refraining from correcting their own tax forms. *See* ECF No. 42-10, PageID.381. And Defendant did not address the equitable effect of Plaintiffs' borrowing additional money to redeem the first mortgage, allegedly in reliance on the 1099-C assuring them that the second mortgage had been cancelled. *See* ECF No. 43, PageID.491. The court finds that the better course is to allow the issue of equitable estoppel to be briefed in a second motion

for summary judgment limited to that and any other remaining affirmative defenses.

### D. Necessary Parties and Scope of Relief

Finally, Plaintiffs argue that the judgment Ashland seeks cannot be entered into because Ashland has not established its priority and the strength of its title. Ashland, in its motion, asks the Court to declare its FAM a first lien, to extinguish all other interests, to bar all other persons from redemption, and to determine the priorities of all parties. ECF No. 42, PageID.304-05. The court finds these arguments unripe because the court would not, in any case, order judicial foreclosure until the parties have separately addressed the remaining issues identified above.

## V. CONCLUSION

Therefore, the Court **GRANTS IN PART and DENIES IN PART** the motion for summary judgement (ECF No. 42) as follows:

- The motion is **GRANTED** as to discharge; the 1099-C did not operate to discharge the debt as a matter of law.

- **GRANTED** as to waiver; no reasonable jury could find Ashland waived its right to collect or foreclose by clear and convincing evidence.
- **GRANTED** as to the statute of limitations; no evidence suggests that any statute of limitations bars enforcement of the accelerated mortgage.
- **DENIED** as to the requested relief as unripe.

It is **FURTHER ORDERED** that Defendant is granted leave to file a second motion for summary judgment addressing the remaining issues identified in this opinion and raised in Plaintiff's response brief, within 30 days, if the record supports such a motion. The normal briefing page limits apply.

**SO ORDERED**.

Date: August 13, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge